CAMPBELL v. VIRGINIA-CAROLINA CHEMICAL CO.

1. SPECIFIC PERFORMANCE.—EQUITY has jurisdiction to decree specific performance of purchase of phosphate rock *in place.*

2. IBID.—The plaintiff here not entitled to specific performance because correspondence does not show a completed transaction, the agreement is lacking in mutuality, and purchaser had the right to termi-

nate the negotiations before the seller signified his willingness to carry out. the requirements of purchaser. .

3. TRUSTS.—If the person creating a trust in realty confer upon trustee full power of sale, the Court will not interfere with his discretion as to investment, unless it is made to appear that there is fraud, or that the rights of the *cestui que trustent* are otherwise jeopardized, nor is it encumbent on purchaser to see that the proceeds of sale are invested according to the trust.

Before WATTS, J., Charleston, April, 1903.   Reversed.

Action by C. O. Campbell, trustee, against Virginia-Carolina Chemical Co. *et al.*

From Circuit decree, the Virginia-Carolina Chemical Co. appeals.

*Messrs. Mitchell & Smith,* for appellant, cite: *As to duty of purchaser of trustee to see to investment of funds:* Lewin on Trusts, 429, *et seq.;* 2 DeS. Eq., 375; Speer Eq., 134; 24 S. C., 179, 487; 29 S. C., 278.   *As to validity of contract under statute of frauds:* 21 S. C., 119; 16 S. C., 624; 33 S. C., 279; 13 Rich. Eq., 250; 27 S. C., 363; 7 Rich. Eq., 384; 32 S. C., 533; 8 Rich., 247; Rice Eq., 109; 1 Hill Ch., 57; 1 Add. on Con., 14; Pom. on Con., secs. 162, 163; 10 Wall., 359; 45 Fed. R., 407; 8 DeG. M. & G., 731; 10 S. E. R., 240.   *Is plaintiff in position to enforce specific performance:* 56 S. C., 259; 53 S. C., 572; 48 S. C., 175; 41 S. C., 349.

*Messrs. Smythe, Lee & Frost,* contra, cite: *As to the writings making out a definite contract:* 66 Ala., 346; 66 S. C., 61; 136 U. S., 82.   *As to sale of rock in place:* 2 Ency., 768; 3 S. C., 168.   *As to jurisdiction:* 22 Ency., 941; 2 Hill Ch., 121; Rich. Eq. Ca., 239; 5 S. C., 450; 48 S. C., 176; 41 S. C., 353; 6 Rich. Eq., 324; 10 Rich. Eq., 447; 57 S. C., 133; 6 Rich. Eq., 324; 11 Rich. Eq., 220; 53 S. C., 572; 41 S. C., 353.   *As to definiteness of contract:* 1 Hill Ch., 159; 136 U. S., 83; 66 Ala., 346; 95 U. S., 289; 1 N. & McC., 563; 6 B. & C., 437; 2 B. & P., 238; 15 East., 102; 99 E. C. L., 844.   *As to right of trustee to sell and duty of*

*purchaser to see to investment:* 24 S. C., 490; 1 Speer Eq., 134; 6 Rich. Eq., 216; 23 S. C., 494; 24 S. C., 184; 60 S. C., 172.

April 19, 1904.  The opinion of the Court was delivered by

MR. JUSTICE GARY.  This is an action for the specific performance of an alleged contract for the sale of the phosphate mineral rights in a certain tract of land.  The Circuit Court rendered a decree, in which it was held that the plaintiff was entitled to such performance of the contract.

The defendant appealed upon numerous exceptions, but his attorneys have grouped the questions presented by them as follows:

"1. Has the would-be purchaser of real property held in trust, the *right* to demand that the proceeds of sale be reinvested, under the same trusts as directed by the trust deed?

"2. Was any explicit written contract of sale in this case entered into between the plaintiff and the defendant, the Virginia-Carolina Chemical Co., such as would be valid under the statute of frauds?

"3. Under the circumstances of this case, was the Virginia-Carolina Chemical Co. guilty of such wrongful action as a court of equity would decree a specific performance?

"4. Is not the present a case in which the plaintiff had a complete and adequate remedy at law, and, therefore, equity would refuse its aid in decreeing a specific performance?"

As number 4 of the foregoing questions is jurisdictional in its nature, it will be first disposed of.  It is only necessary to refer to the case of *Hammond* v. *Foreman,* 48 S. C., 175, 26 S. E., 212, to show that the Court, in the exercise of its chancery powers, had jurisdiction to decree specific performance of the contract.

The next question in regular order to be considered, is whether the alleged agreement was obnoxious to the statute of frauds.  Prior to the 7th of December, 1899, there had been some negotiations between the plaintiff and the

2    Virginia-Carolina Chemical Co., through W. B. Chisolm, its general manager, with regard to the sale of the phosphate rock, in place, in the premises described in the complaint, and known as "Lilliput" farm. On that day, C. O. Campbell wrote to W. B. Chisolm as follows: "I will take $2,500 for the phosphate rock on the 'Lilliput' farm, adjoining the 'Vineyard' lands, on which you are now mining." The plaintiff also introduced in evidence other correspondence, which must be considered in connection with the foregoing letter, as it throws light upon the question whether the letter dated 7th December, 1899, was in response to an absolute and unconditional offer on the part of the appellant.

W. B. Chisolm, on the 8th December, 1899, wrote to the plaintiff: "I will have our Mr. Pendarvis examine the property and advise you later." In a letter to W. B. Chisolm, dated 4th January, 1900, the plaintiff wrote: "At your earliest convenience please advise me if Mr. Pendarvis' examination has been satisfactory or not. My foreman from the farm writes me that he has laid out lines for a railroad across one of the fields, and wishes to know if he must remove the fencing. I wrote him to do what Mr. Pendarvis requested, but cannot instruct him further until I hear from you." On 6th January, 1900, W. B. Chisolm wrote: "As soon as I can take up the matter with Mr. Pendarvis, I will advise you." In a letter dated 12th February, 1900, the plaintiff said: "I delivered the papers relating to the farm on Ashley River to Mr. H. A. M. Smith, of Messrs. Mitchell & Smith, as requested by you, but have heard nothing from them. You were so busy on our last interview, that I hastened off without stating what I expected in the sale of the rock. It is a limit of five years for its mining. Kindly have this time limit incorporated in the contract." W. B. Chisolm replied, 12th February, 1900: "I note that you want a limit of five years for this mining inserted in this paper. This we are not willing to do at all. There were no specifications and no limit whatever as to time of our taking

it. We would not touch it at any price if we were compelled to take it out in five years. The price we agreed to pay you for this rock was, as you know, far greater than the whole property was worth. There is no mention in the letter written us by you of anything pertaining to this subject. I will have Mr. Smith, as soon as he can, draw up these papers in conformity with our agreement." C. O. Campbell, on the 14th of February, replied: "I regret to note the illiberal view you take of our transaction in your letter of the 12th instant. I told you I would sell the rocks on the farm at your offer of $2,500. After examination you have notified me you accept. If five years be too short a time for mining the rock, I am willing to be perfectly fair and give eight years." W. B. Chisolm wrote, February 19th, 1900: "You had better come to Charleston and see me with reference to this matter."

On the 30th of March, 1900, the appellant's attorneys wrote the plaintiffs: "You could either go into Court, and get authority from the Court to make the sale to you, in which case we should have nothing to do with the reimbursement of the proceeds of sale, or you could sell under the power of sale; but, in that case, we would be compelled to see that the proceeds of this sale were reinvested, subject to the terms of the original trust. It is impossible for Mr. Chisolm to arrange any transfer so as to eliminate these requirements, and unless you can comply with them, he will be unable to carry out the purchase." The plaintiff denied the right of the appellant to insist upon these requirements, and refused to comply with them; whereupon the appellant's attorneys, on the 25th of April, 1900, wrote to the attorneys of the respondent that the transaction was at an end. On the same day the plaintiff's attorneys wrote to the appellant's attorneys that the plaintiff was willing to carry into effect their requirements as to title, but the appellant's attorneys declined the proposition.

The correspondence subsequent to the letter of the 7th December, 1899, was inconsistent with the theory that it was written in reply to an absolute and unconditional offer by

the appellant to purchase the rock at the price of $2,500; for immediately after it was received, W. B. Chisolm wrote to the plaintiff that he would have an examination of the property made, and advise him later, and the plaintiff recognized this right. Then, again, the plaintiff insisted upon a time limit for the removal of the phosphate rock, but the appellant refused to consent to it. During the pendency of the negotiations either party had the right to insist upon whatever conditions he saw fit, and the agreement could not be considered as a complete contract, until the proposed conditions were assented to by the opposite party. Before the plaintiff signified his willingness to carry out the requirements proposed by the appellant, it saw fit to terminate the negotiations, which it had the right to do. The testimony convinces us that the minds of the parties did not meet, and that the agreement was lacking in mutuality. The plaintiff, therefore, is not entitled to specific performance of the contract.

These views render speculative the question whether the appellant had the *right* to demand that the proceeds of sale be reinvested under the same trusts, as directed by the trust deed. However, as the question fairly arises upon the record, we will not decline to consider it. The attorneys for the appellant have not cited any authority from this State sustaining their contention. His Honor, the Circuit Judge, cited the following cases to show that such right does not exist: *Webb* v. *Chisolm,* 24 S. C., 490; *Price* v. *Krasnoff,* 60 S. C., 172, 38 S. E., 413; *Redheimer* v. *Pyron,* 1 Sp. Eq., 134; *Laurens* v. *Lucas,* 6 Rich. Eq., 216; *Jones* v. *Hudson,* 23 S. C., 494. To which may be added *Lining* v. *Peyton,* 2 DeS. Eq., 375. The reason that the purchaser has no such right is that it would limit the time within which the trustee should make the reinvestment; whereas, if he was allowed to exercise his full discretion, he might be able to make an investment far more advantageous to the rights of the *cestui que trustent.* It would, furthermore, hamper his discretion as to the kind of property in

which he might desire to reinvest. If the person creating the trust, confer upon the trustees full power of sale, the Court will not interfere with his discretion unless it is made to appear that there is fraud, or the rights of the *cestui que trustent* are otherwise jeopardized.

Judgment reversed.